IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMANDA CURIALE | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-1432 |
| LENOX GROUP, INC., and DOES 1-10 | : | |
| | : | |

**SURRICK, J.**                                                    **NOVEMBER 14, 2008**

### MEMORANDUM & ORDER

Presently before the Court are the parties' Joint Motion and Memorandum in Support of

Preliminary Approval of Class Action Settlement (Doc. Nos. 22, 23).  For the following reasons,

the parties' Joint Motion (Doc. No. 22) will be granted.

**I.      BACKGROUND**

**A.      The Complaint**

On April 10, 2007, Plaintiff Amanda Curiale ("Plaintiff") brought the instant action on

behalf of herself and other putative class members.  Plaintiff alleges that Defendant Lenox

Group, Inc. ("Defendant") and Does 1 through 10 violated the Fair and Accurate Credit

Transaction Act ("FACTA"), 15 U.S.C. §§ 1681 et seq.  Specifically, Plaintiff alleges that

Defendant violated § 1681c(g)(1), which provides that:

> [N]o person that accepts credit cards or debit cards for the transaction of business
> shall print more than the last five digits of the card number or the expiration date
> upon any receipt provided to the cardholder at the point of the sale or transaction.

The civil penalties for "willful noncompliance" with § 1681c(g) are set forth in

§ 1681n(a), which provides:

> Any person who willfully fails to comply with any requirement imposed under this
> subchapter with respect to any consumer is liable to that consumer in an amount
> equal to the sum of –

(1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

. . .

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).  Plaintiff's Complaint does not claim that she or any purported class members suffered actual monetary injury as a result of Defendant's alleged failure to comply with FACTA.

On July 16, 2007, Defendant filed an answer to the Complaint, and the parties thereafter requested mediation.  On September 20, 2007, the Honorable Diane Welsh conducted an all-day mediation session.  (Joint Mot. ¶ 1.)  Counsel for the parties, including Defendant's Assistant General Counsel, attended the mediation.  (Pls.' Resp. 1.)  At that time, following "arms-length negotiations," the parties reached an agreement to settle the claims in dispute.  (Joint Mot. ¶ 1.) On or about December 5, 2007, the parties formally executed a Class Action Settlement Agreement (the "Settlement Agreement").

**B.      The Settlement Agreement**

The parties agreed, for settlement purposes only, to the certification of the following class:

> All persons who received electronically printed receipts at the point of sale or transaction from a retail store location operated by Lenox, in a transaction occurring between December 4, 2006 and April 19, 2007, wherein the receipt displayed (1) more than the last five digits of the person's credit card or debit card number, and/or (2) the expiration date of the person's credit card number.

(Settlement Agreement ¶ 1.3.)

2

The Settlement Agreement has four basic terms.  First, Defendant agreed to enter into a consent decree pursuant to which it will remain in full compliance with FACTA's truncation requirements.  (Id. ¶ 2.1.3.)  Second, Defendant agreed to provide Participating Class Members with a Settlement Relief Voucher permitting the member to elect one of three relief options:  (a) $5.00 off any purchase at Defendant's stores; (b) a free bud vase with a retail value of $10.00; or (c) $25.00 off a purchase at Defendant's stores of $150.00 or more.[1]  (Id. ¶ 2.1.1.)  Third, Defendant agreed to donate $5,000.00 to a charity of its choosing, subject to approval of class counsel.  (Id. ¶ 2.1.2.)  Fourth, Defendant agreed not to object to the Court's awarding of $115,000.00 in attorney fees and up to $5,000.00 in allowable litigation costs and expenses.  (Id. ¶ 2.6.1.)  In exchange for those promises, Plaintiff agreed to release Defendant from all liability and to dismiss all claims with prejudice.  (See id. ¶ IV.)

In the Settlement Agreement, Defendant admits no wrongdoing and denies all claims as to liability and damages.[2]  (Id. ¶ I.)  Indeed, Defendant expressly "den[ies] all of the claims and contentions alleged by [Plaintiff]."  (Id. ¶ III.)  While admitting no underlying liability, Defendant executed the Settlement Agreement after "tak[ing] into account the uncertainty and

---

[1] The Settlement Agreement, ¶ 2.1.1, values the bud vase at $10.00.  The parties' Joint Memorandum of Law in Support of the Joint Motion (Doc. No. 23) values the bud vase at $15.00.  We will accept the $10.00 valuation in the parties' Settlement Agreement as controlling.  A $15.00 valuation would not change our analysis.

[2] Defendant acknowledges that between December 4, 2006 and April 19, 2007, its stores used Point of Sale Equipment that was not programmed to suppress credit cards' expiration dates from the receipts presented to the putative class members.  (Doc. No. 23 at 2.)  Defendant asserts that it did not "willfully" violate FACTA's truncation requirements and that, in fact, it took specific steps calculated to comply fully with the statute.  (Id.)  The parties stated their intention to introduce evidence illustrative of Defendant's compliance efforts in support of final approval of the proposed settlement.  (Id.)

risks inherent in any litigation, especially in multi-party cases like this Litigation."  (Id.)

Defendant "concluded . . . that it [was] desirable that the Litigation be fully and finally settled,"

(id.), and thus "negotiated in good faith" (id. ¶ 2.9.5) with class counsel to reach the Settlement

Agreement in the interest of avoiding "protracted and costly litigation" that could arise if the

matter continued (id. ¶ III).

   One uncertainty and risk inherent to the litigation was the possibility that Congress would

amend FACTA to eliminate Plaintiff's cause of action.  Legislation that would accomplish just

that had been introduced in the United States House of Representatives over a month before the

parties executed the Settlement Agreement.  See H.R. 4008, 110th Congress (1st Sess. Oct. 30,

2008).  The purpose of that legislation, titled the Credit and Debit Card Receipt Clarification Act

(the "Clarification Act"), was to "limit[] abusive lawsuits that do not protect consumers but only

result in increased cost to business and potentially increased prices to consumers" by redefining

"willful noncompliance" under FACTA.  Id.  The Clarification Act provides, in pertinent part,

that:

> [A]ny person who printed an expiration date on any receipt provided to a consumer
> cardholder at a point of sale or transaction between December 4, 2004, and [June 3,
> 2008] but otherwise complied with the requirements of section 605(g) for such
> receipt shall not be in willful noncompliance with section 605(g) by reason of
> printing such expiration date on the receipt.

P.L. 110-241 § 3(a).  The amendment eliminates a private cause of action based solely on failing

to truncate the expiration date.  This is, of course, the claim that Plaintiff has asserted in her

Complaint.  In addition, Congress provided that the Clarification Act:

> shall apply to any action, other than an action which has become final, that is brought
> for a violation of 605(g) of the Fair Credit Reporting Act to which such amendment
> applies without regard to whether such action is brought before or after the date of
> the enactment of this Act.

4

P.L. 110-241 § 3(b).  Thus, the Clarification Act provides retroactive immunity for businesses like Defendant.  Congress enacted the Clarification Act on June 3, 2008.  See P.L. 110-241, 122 Stat. 1566.

The parties were undoubtedly aware of the possibility that Congress would enact the pending legislation when they negotiated the Settlement Agreement, which they "reached voluntarily after consultation with competent legal counsel."  (Agreement ¶ 2.9.5.)  Although the parties conditioned the Settlement Agreement on the Court certifying a settlement class and granting preliminary and final approval of the proposed class settlement, the parties did not condition the Settlement Agreement on the enactment of the pending legislation.  Instead, the parties expressed their intent to consummate the Settlement Agreement while the status of the legislation was unknown.  Paragraph 2.9.4 of the Settlement Agreement provides that the parties:

> (a) acknowledge it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Settlement Agreement.

On December 14, 2007, the parties submitted the instant Motion for Preliminary Approval of Class Action Settlement.  (Doc. No. 22.)  On April 17, 2008, while that Motion was pending, the parties submitted additional support for their motion through a Joint Notice of Supplemental Authority.  (Doc. No. 24.)  The Joint Notice includes a list of cases within the Third Circuit that "were settled on terms analogous to those in the proposed settlement."  (Id.)

## C.    Defendant's Suggestion of Mootness

On June 18, 2008, Defendant reversed course and filed a Suggestion of Mootness.  (Doc. No. 25.)  Defendant's Suggestion of Mootness asks the Court to "deny the parties' request for

preliminary approval of a settlement class as moot and [to] dismiss th[e] action with prejudice." (Id. at 5.)  The reason for Defendant's change of heart was Congress's June 3, 2008 enactment of the Clarification Act, the legislation that was pending in Congress when the parties executed the Settlement Agreement.  Defendant contends that the Clarification Act renders moot the parties' Joint Motion for Preliminary Approval of Class Action Settlement, since the cause of action underlying Plaintiffs' Complaint is no longer cognizable under FACTA.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 23, "the court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class."  Fed. R. Civ. P. 23(e)(1)(A).  Final approval of a class action settlement requires the district court to determine whether "the settlement is fair, adequate, and reasonable."  Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118 (3d Cir. 1990) (citing Walsh v. Great Atl. and Pac. Tea Co., Inc., 726 F.2d 956, 965 (3d Cir. 1983)); see also In re Cendant Corp. Litig., 264 F.3d 201, 231 (3d Cir. 2001).  Prior to granting final approval, however, we must first decide whether preliminary approval should be granted.  The Manual for Complex Litigation describes this process:

> Review of a proposed class action settlement generally involves two hearings.  First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation.  In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties . . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and date of the fairness hearing.

Moore's Federal Practice, Manual For Complex Litigation (Fourth) § 21.632 (2004).

"In evaluating a settlement for preliminary approval, the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute."

Thomas v. NCO Fin. Sys., No. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002)

(quoting Detroit v. Grinnell Corp., 495 F.2d 448, 456 (2d Cir. 1974)).  Instead, the court must

determine whether "the proposed settlement discloses grounds to doubt its fairness or other

obvious deficiencies, such as unduly preferential treatment of class representatives or of

segments of the class, or excessive compensation for attorneys, and whether it appears to fall

within the range of possible approval. . . ." Id. (citing In re Prudential Sec. Inc. Ltd. P'ship Litig.,

163 F.R.D. 200, 209 (S.D.N.Y. 1995); Moore's Federal Practice, Manual for Complex Litigation

(Third) § 30.41 (1995)).  This analysis often focuses on whether the settlement is the product of

"arms-length negotiations."  See, e.g., Thomas, 2002 WL 1773035, at *5; Tenuto v. Transworld

Sys., Inc., No. 99-4228, 2001 WL 1347235, at *1 (E.D. Pa. Oct. 31, 2001).

## III.   DISCUSSION

We consider the Joint Motion for Preliminary Approval of Class Action Settlement in the

context of FACTA's Clarification Act and Defendant's Suggestion of Mootness.  We will first

consider the general enforceability of the Settlement Agreement.  Next, we will consider the

effect of the Clarification Act on the Settlement Agreement.  Finally, we will evaluate the

Settlement Agreement for preliminary approval.

### A.   Enforceability of the Settlement Agreement

A voluntary settlement agreement may be binding upon the parties, irrespective of

whether it was made in the presence of the Court, and even in the absence of a writing.  Green v.

Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970) (citations omitted); see also D.R. by M.R. v. East

Brunswick Bd. of Educ., 109 F.3d 896, 901 (3d Cir. 1997) (holding that a settlement agreement

is binding despite the fact that it resulted from mediation instead of litigation); Good v. The Pa.

R.R. Co., 384 F.2d 989, 990 (3d Cir. 1967) (holding that a settlement agreement, entered into by duly authorized counsel, was "valid and binding despite the absence of any writing or formality").  Courts consider settlement agreements to be binding contracts.  See In re Columbia Gas Sys., Inc., 50 F.3d 233, 238 (3d Cir. 1995) ( "In a non-bankruptcy context, we have treated a settlement agreement as a contract.").  Ordinary principles of contract law govern settlement agreements.  See Cendant, 233 F.3d at 193 (noting that "basic contract principles do indeed apply to settlement agreements").

There is a strong judicial policy in favor of the voluntary settlement agreements.  See Pennwalt Corp. v. Plough, 676 F.2d 77, 79-80 (3d. Cir. 1982) (holding that voluntary settlement agreements are "specifically enforceable and broadly interpreted").  Indeed, "[v]oluntary settlement of civil controversies is in high judicial favor.  Judges and lawyers alike strive assiduously to promote amicable adjustments of matters in dispute, as for the most wholesome of reasons they certainly should."  Id. at 80; see also D.R. by M.R., 109 F.3d at 901 ("Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts.").

"The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab., 55 F.3d 768, 784 (3d Cir. 1995) (citations omitted). In addition to conservation of judicial resources, "[t]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial."  Id. (citing First Commodity Corp. of Boston Customer Accts. Litig., 119 F.R.D. 301, 306-07 (D. Mass. 1987)).  "These economic gains multiply when settlement also avoids the costs of litigating class status – often a complex

litigation within itself." Id.

There is no doubt that the Settlement Agreement entered into here is binding and enforceable under general principles of contract interpretation. The parties executed the Settlement Agreement through capable and experienced counsel following mediation with a well-respected and experienced mediator. The parties acknowledge in the Settlement Agreement that they negotiated in good faith and at arm's length. The parties acknowledge that they consulted with competent counsel before they executed the Settlement Agreement. The parties further acknowledge that their respective counsel assisted them in reaching the Settlement Agreement, the terms of which "are contractual." (Settlement Agreement ¶ 2.9.16.) The Settlement Agreement sets forth material terms and the details of the parties' performance and expectations. In short, the Settlement Agreement is a binding contract.

### B.    Effect of the Clarification Act on the Settlement Agreement

There can also be no doubt that the Clarification Act eliminates the cause of action underlying Plaintiff's Complaint, and that the Clarification Act applies retroactively to encompass Plaintiff's FACTA claim. See P.L. 110-241 § 3(b) (noting that the amendment applies to any action "other than an action which has become final"). The dispute here is not whether the Clarification Act eliminates Plaintiffs' underlying claims, but rather whether the Clarification Act moots the Settlement Agreement that the parties executed when the legislation was still pending in Congress. We conclude that it does not.

A recent bankruptcy case from the Eastern District of Pennsylvania is instructive. See In re Frascella Enter., Inc., No. 06-10322, 2008 WL 2051115, at *10 (Bankr. E.D. Pa. May 8, 2008) (Sigmund, J.). In Frascella, the defendant sought to avoid its contractual obligations under a

class action settlement agreement after an intervening change in law created a legal landscape more favorable to the defense. Id. at *9. The court held that "a favorable change in the law does not afford a settling party a chance to repudiate an otherwise valid settlement to which it is contractually bound." Id. (citing Coltec Indus. Inc, v. Hobgood, 280 F.3d 252, 273 (3d Cir. 2002)). The court offered the following rationale:

> [I]t makes no sense that the costly and time consuming class approval process could be initiated and the Defendants could pull out at any time for no reason. Plaintiffs cite two cases that bring this point home. In Allen v. Alabama State Board of Education, 612 F. Supp. 1046 (M.D. Ala. 1986) [rev'd on other grounds, 816 F.2d 575 (11th Cir. 1987)], the defendants repudiated a written class settlement agreement contending that the absence of Rule 23 approval meant the agreement was not yet binding. While recognizing the procedural steps to final approval had yet to occur (preliminary approval, class notice and fairness hearing), the court nonetheless concluded that before embarking on that "expensive and time-consuming" process, "[i]t is essential that . . . the court and the parties have some assurance that the settlement is binding on the name[d] parties. Id. at 1054. Even closer to the facts sub judice, Ramirez v. DeCoster, 142 F. Supp. 2d 104 (D. Me. 2006) involved a mediated class settlement which, during continuing negotiations of the formal written settlement agreement, was abandoned by the defendants when some favorable court rulings made them rethink their willingness to settle. The court, applying basic contract principles, found that all material terms had been agreed to and the negotiation over the document was "a scrivening exercise, with good faith obligations attached." Id. at 114. While it observed that the settlement might not ultimately succeed based on Rule 23 class action requirements still to be met, the agreement was nonetheless contractually enforceable. Id. at 116; see also Main Line Theatres v. Paramount Film Distrib. Corp., 298 F.2d 801, 804 (3d Cir. 1962) (neither party was free to repudiate the agreement during the period required to accomplish a condition of the settlement); McClure v. Township of Exeter, No. 05-5846, 2006 WL 2794173, at *3 (E.D. Pa. Sep. 26, 2006) (contract is enforceable conditioned on the implied condition precedent - formal ratification by the Township and is not subject to unilateral recision pending that event).

Frascella, 2008 WL 2051115, at *10.

The Court of Appeals for the Ninth Circuit considered a similar problem in In re Syncor ERISA Lit., 516 F.3d 1095 (9th Cir. 2008). In Syncor, the defendants filed a motion for summary judgment and thereafter participated in mediation. Id. at 1099. While the defendants'

10

motion for summary judgment was pending, the parties continued to engage in settlement

negotiations and ultimately executed a proposed settlement agreement.  Id.  The proposed

agreement stated that "Court approval is a condition of this settlement."  Id.  The parties notified

the court that they "signed a term sheet and have begun the process of formally documenting the

settlement," and also submitted a joint stipulation and proposed order asking the court not to rule

on the pending summary judgment motion.  Id.  Unbeknownst to the parties, the court had

already signed an order granting the defendants' motion for summary judgment.  Id.  The district

court denied as moot the parties' proposed order regarding settlement.  Id.  Plaintiffs filed a

motion to set aside the judgment and for preliminary approval of the settlement, which the

district court denied.  Id.  On appeal, the Ninth Circuit reversed, "conclud[ing] that the district

court abused its discretion by entering the final judgments and by refusing to vacate the final

judgments."  Id. at 1103.  The court noted that "the requirement that the district court approve a

class action settlement does not affect the binding nature of the parties' agreement."  Id. at 1100

(citing Collins v. Thompson, 679 F.2d 168, 172 (9th Cir. 1982) ("Judicial approval of a [class

action settlement] is clearly a condition subsequent, and should not affect the legality of the

formation of the proposed [settlement] as between the negotiating parties.")).  The court

observed that:

> [a]t the time of the settlement, Defendants knew they had dispositive motions
> pending and chose the certainty of settlement rather than the gamble of a ruling on
> their motions.  Thus, Defendants chose to forego the chance that the district court
> would grant summary judgment in their favor.

Id.  The case was remanded to the district court with instructions "to review the settlement

agreement pursuant to Rule 23(e)."  Id. at 1103.

The Court of Appeals for the Eighth Circuit similarly enforced a settlement agreement in

11

<u>Sheng v. Starkey Labs, Inc.</u>, 117 F.3d 1081, 1083 (8th Cir. 1997).[3]  In <u>Sheng</u>, the district court signed an order granting the defendant's motion for summary judgment and mailed copies of the order to counsel.  <u>Id.</u> at 1082.  The court's order was not immediately entered in the docket, and the clerk of court did not enter judgment.  <u>Id.</u>  A few days later, before the clerk entered the order on the docket and before counsel received the order in the mail, the parties met for a settlement conference.  <u>Id.</u>  The parties – unaware of the court's order granting summary judgment – reached a settlement agreement and informed the court that the case was settled.  <u>Id.</u>  The court then rescinded the order granting summary judgment and directed the clerk not to enter the order or judgment in the docket.  The next day, the court dismissed the case "on the ground that it had been settled."  <u>Id.</u>  Thereafter, the parties received in the mail the court's orders that granted, and then rescinded, summary judgment in the defendant's favor.  <u>Id.</u> at 1082-83.  The defendant filed a Rule 60(b) motion seeking to vacate the order that dismissed the case on settlement grounds.  <u>Id.</u> at 1083.  In support of its motion, the defendant alleged that the parties did not agree on all material terms of the agreement and that the agreement was based on mutual mistake.  <u>Id.</u>  The court denied the Rule 60(b) motion, and on appeal the Eighth Circuit remanded the case for an evidentiary hearing to determine whether the parties had agreed on all essential terms of the agreement.  <u>Id.</u>  The district court, on remand, found that the parties had reached agreement on all essential terms, but held that the contract was unenforceable because it was based on both parties' mistaken assumption that summary judgment had not been granted.  <u>Id.</u>  Accordingly, the district court rescinded its dismissal order and reinstated the summary judgment order in defendant's favor.  Another appeal followed.

---

[3] Since <u>Sheng</u> was not a class action, court approval was not required.

On appeal, the Eighth Circuit reversed and held that the defendant was bound by the settlement agreement notwithstanding the court's summary judgment ruling on the merits.  Id. The court stated that, "Rule 60(b) does not allow district courts to indulge a party's discontent over the effects of [the party's] bargain."  Id. (internal quotation omitted).  Specifically, the court noted that "[the defendant] knew it had a dispositive motion pending, and yet chose the certainty of settlement rather than the gamble of a ruling on its motion."  Id. at 1084.  Because the parties had entered into a binding settlement, the Sheng court held that the district court abused its discretion in granting the defendant's Rule 60(b) motion and remanded the case "for entry of judgment dismissing the action based on the settlement agreement."  Id.

In this case, we find nothing in the Clarification Act that would moot the parties' Settlement Agreement, just as the summary judgment rulings in Syncor and Sheng did not moot the settlement agreements there.  The fact that the Settlement Agreement is a class action settlement governed by Rule 23 does not affect the enforceability of the Settlement Agreement as a binding contract.  The parties executed the Settlement Agreement with the understanding that intervening events could affect their interests in the litigation.  Indeed, the Clarification Act was pending in Congress when the parties negotiated the Settlement Agreement at arm's length and with the assistance of counsel.  The Settlement Agreement simply hedged the parties' bets, reflecting their choice of "the certainty of settlement [over] the gamble" of legislative action. See Sheng, 117 F.3d at 1084.  That Congress ultimately enacted the legislation does not allow Defendant to avoid the Settlement Agreement it executed in good faith with Plaintiff.  See, e.g., Dunlap v. Chicago Osteopathic Hosp., No. 92-3813, 1995 WL 94876, at *1 (7th Cir. Mar. 7, 1995) (unpublished opinion) (affirming district court's refusal to set aside a valid settlement

agreement where subsequent change in law would make it easier for the plaintiff to "prove her case").

Moreover, it is of no consequence that FACTA, as amended, no longer recognizes the claims underlying Plaintiff's Complaint.  The Settlement Agreement is a contract that exists independently from the Complaint.  This contract expressly disavows Defendant's FACTA liability.  (See Settlement Agreement ¶ 2.9.5.)  Thus, whether Defendant faces FACTA liability is irrelevant to our consideration of the Settlement Agreement for preliminary approval.  There is nothing in the Settlement Agreement that conditions its enforceability on the enactment of the pending legislation.  Final court approval is the Settlement Agreement's only condition.  We will not permit Defendant to avoid its independent contractual obligations simply because the law evolved in a way favorable to Defendant's position in the underlying lawsuit.

Defendant relies on Ehrheart v. Verizon Wireless, No. 07-1165, 2008 U.S. Dist. LEXIS 47224 (W.D. Pa. June 13, 2008), in support of its position that the settlement should be set aside.  In setting aside a settlement in circumstances factually similar to those here, the court in Ehrheart primarily relied upon the Tenth Circuit decision in Biodiversity Associates v. Cables, 357 F.3d 1152, 1169-70 (10th Cir. 2004).  Biodiversity is inapposite.  In Biodiversity, the Tenth Circuit was considering the effect of narrow legislation on a settlement agreement executed by the Forest Service with various environmental groups.  Id. at 1156.  The legislation was a rider to an appropriations bill that enacted the terms of the parties' settlement agreement.  Id.  However, the rider required the Forest Service to take a variety of actions that violated the settlement agreement and explicitly prohibited judicial review of those actions.  Id. at 1160.  The rider specifically referred to the settlement agreement and stated that the agreement should continue in

effect to the extent it was not preempted by the rider.  Id. at 1159.  The Biodiversity court upheld Congress' authority (a) to override a settlement agreement affecting federal lands, and (b) to limit judicial authority to consider actions by the Forest Service that might violate the settlement agreement.  See id. at 1172.

Here, by contrast, the Clarification Act "is a clarifying amendment which merely eliminates a cause of action based solely on a person's failure to truncate expiration dates from credit and debit card receipts, and which does not purport to limit parties' ability to negotiate binding settlement agreements or judicial authority to enforce such settlements of FACTA claims made before the effective date of the amendments."  Colella v. Univ. of Pittsburgh, 569 F. Supp. 2d 525, 533 (W.D. Pa. 2008) (discussing the Clarification Act and reaching same conclusion).  The Clarification Act has no effect on the binding Settlement Agreement executed by the parties while the legislation was pending.  Like the court in Colella, we find Ehrheart unpersuasive.  See id. at 531 n.2 (noting disagreement with Ehrheart and enforcing settlement agreement); see also Hughes v. InMotion Entm't, No. 07-1299, 2008 WL 3889725, at *6 n.1 (W.D. Pa. Aug. 18, 2008).

### C.    Evaluation of the Settlement Agreement for Preliminary Approval

Having concluded that the parties executed a valid Settlement Agreement, and having determined that the Clarification Act does not moot the Settlement Agreement, we turn now to the joint Motion for Preliminary Approval of the Class Action Settlement.

The preliminary approval determination requires us to consider, inter alia, whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class

15

objected." <u>In re Linerboard Antitrust Litig.</u>, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003) (citing <u>In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.</u>, 55 F.3d 768, 785-86 (3d Cir. 1995)).[4]

 The proposed settlement here provides for payment by Defendant to the putative settlement class members pursuant to one of three options:  (a) $5.00 off of any purchase; or (b) a free bud vase, with a retail value of $10.00; or (c) $25.00 off a purchase of $150.00 or more. (Settlement Agreement ¶ 2.1.1.)  The number of vouchers available is capped at the number of card transactions during the Class Period.  (<u>Id.</u> ¶ 2.9.1.)  In addition, the proposed settlement provides for payment by Defendant of $5,000.00 to a charity selected by Defendant and subject to class counsels' approval.  (<u>Id.</u> ¶ 2.1.2.)  The proposed settlement also requires the parties to enter into a proposed consent decree "pursuant to which [Defendant] will agree to continue to abide by the truncation requirements of FACTA, as amended."  (<u>Id.</u> ¶ 2.1.3.)  Finally, the proposed settlement provides for payment by Defendant to class counsel of "$115,000.00 for attorney fees and up to $5,000 for all allowable Litigation costs and expenses,"(<u>id.</u> ¶ 2.6.1.), and $2,500.00 to the named class representative (<u>id.</u> ¶ 2.7.1).

---

[4] The Court of Appeals for the Third Circuit has adopted a nine-factor test to help district courts structure their final decisions to approve settlements as fair, reasonable, and adequate as required by Rule 23(e).  <u>See</u> <u>In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions</u>, 148 F.3d 283, 317 (3d Cir. 1998) (citing <u>Girsh v. Jepson</u>, 521 F.2d 153, 157 (3d Cir. 1975)). Those factors are:  (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.  <u>Girsh</u>, 521 F.2d at 157.  At the preliminary approval stage, however, we need not address all of these factors, as "the standard for preliminary approval is far less demanding."  <u>Gates v. Rohm & Haas Co.</u>, 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008).

We find that the terms of the settlement are fair, reasonable, and adequate given the nature of the disputed claims and the absence of actual injury.  There is no doubt that the parties negotiated at "arm's length" to reach the Settlement Agreement.  (See Joint Mot. ¶ 1.) Moreover, discovery was sufficient given Defendant's acknowledgment "that between December 4, 2006 and April 19, 2007, its stores were using Point of Sale Equipment that was not programmed to suppress the expiration dates from the receipts that were presented to their customers who made purchases with a credit or debit card," and that as a result, "353,000 customers were presented with receipts" that violated FACTA.  (Doc. No. 23 at 2.)  The issue remaining for discovery is Defendant's willfulness, and the parties have represented to us that they are introducing "[e]vidence illustrative of Defendant's compliance efforts" in support of final approval of the proposed settlement.  (Doc. No. 23 at 2.)  In addition, the proponents of the Settlement Agreement, counsel for the settling parties, are experienced in class action and similar litigation.  No class members have filed objections to the settlement at this time.  Finally, the terms of the settlement here are similar to the terms of settlements reached in other FACTA class actions that have been approved by courts in this Circuit.  See e.g., Smith v. Grayling Corp., No. 07-1905, 2008 WL 3861286, at *1 (E.D. Pa. Aug. 20, 2008) (Savage, J.) (granting final approval of FACTA settlement providing for $7.00 vouchers and $3,000.00 to plaintiffs' class representative); Ehrheart v. Pfaltzgraff Factory Stores, Inc., No. 07-1433 (E.D. Pa. June 5, 2008) (Padova, J.) (granting final approval of FACTA settlement providing for payment options of a free mug or dinner plate valued at $8.00, or a coupon for $10.00 off a $25.00 purchase; attorneys' fees of $112,500.00 to the plaintiffs' class counsel; and $2,500.00 to the plaintiffs' class representative); Curiale v. Hershey Entm't & Resorts Co., No. 07-0651 (M.D. Pa. May 21,

2008) (Kane, J.) (granting final approval of FACTA settlement providing for $8.33 voucher or $8.00 coupon; attorneys' fees of $105,000.00; a donation of $5,000.00 to charity; and $2,000.00 to plaintiffs' class representative); <u>Carusone v. Joe's Crab Shack Holdings, Inc.</u>, No. 07-0320 (W.D. Pa. May 28, 2008) (Lenihan, J.) (granting final approval of FACTA settlement providing for two $4.00 coupons; a donation of $5,000.00 to charity; attorneys' fees; and $2,500.00 to plaintiffs' class representative); <u>Long v. Joseph-Beth Group, Inc.</u>, No. 07-0433 (W.D. Pa. May 27, 2008) (Cercone, J.) (granting final approval of FACTA settlement providing for $5.00 coupon).

We see no reason at this juncture to question the fairness, reasonableness, and adequacy of the settlement, which was reached after extensive arm's length negotiation between very experienced and competent counsel and facilitated by a respected retired jurist. Under all the circumstances, we conclude that preliminary approval of this settlement is appropriate.

## IV.    CONCLUSION

For all of these reasons, the Joint Motion to Approve Settlement Agreement will be granted.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMANDA CURIALE                          :
                                        :          CIVIL ACTION
            v.                          :
                                        :          NO. 07-1432
LENOX GROUP, INC., et al.               :

## PRELIMINARY APPROVAL ORDER

AND NOW, this 14th day of November, 2008, it appearing that the parties to the above-captioned action have entered into a Class Action Settlement Agreement (the "Settlement Agreement") that, together with the exhibits thereto, sets forth the terms and conditions for a proposed settlement of the claims alleged in the Class Action Complaint ("Complaint"), and the Court having read and considered the parties' Settlement Agreement and the accompanying exhibits, the Court finds as follows:

1.      All defined terms contained herein shall have the same meanings as set forth in the Settlement Agreement executed by the Settling Parties and filed with this Court.

2.      The Class Representative and the Lenox Releasees, through their counsel of record in the Litigation, have reached an agreement to settle all claims in the litigation.

3.      The Court preliminarily concludes that, for the purposes of approving this settlement only and for no other purpose and with no other effect on the Litigation should the proposed Settlement Agreement not ultimately be approved or should the Effective Date not occur, the proposed Rule 23 Class appears to meet the requirements for certification under Federal Rule of Civil Procedure 23:  (a) the proposed class is ascertainable and so numerous that joinder of all members of the

class is impracticable; (b) there are questions of law or fact common to the proposed Class, and there is a well-defined community of interest among members of the proposed Class with respect to the subject matter of the Litigation; (c) the claims of Class Representative Amanda Curiale are typical of the claims of the members of the proposed Class; (d) Class Representative Amanda Curiale will fairly and adequately protect the interests of the Members of the Class; (e) a class action is superior to other available methods for an efficient adjudication of this controversy; (f) the counsel of record for the Class Representative are qualified to serve as counsel for the Class Representative in their own capacities as well as their representative capacities and for the Class; and (g) common issues will likely predominate over individual issues.

4.     The moving parties also have presented to the Court for review a Class Action Settlement Agreement ("Settlement Agreement").  The Agreement proposes a Settlement that is within the range of reasonableness and meets the requirements for preliminary approval.

5.     The moving parties have presented to the Court for review a plan to provide notice to the proposed Class of the terms of the settlement and the various options the Class has, including, among other things, the option for Class Members to opt-out of the class action; the option to be represented by counsel of their choosing and to object to the proposed settlement; and/or the option to become a Participating Claimant.  The notice will be published consistent with the Settlement Agreement.  The notice proposed by the Settling Parties is the best

2

practicable under the circumstances, consistent with Federal Rule of Civil

Procedure 23(c)(2)(B).

Accordingly, it is ORDERED as follows:

1.　Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Class Action

Settlement Agreement is preliminarily approved.

2.　This action is preliminarily certified as a class action pursuant to Federal Rule of

Civil Procedure 23 on behalf of all persons who received electronically printed

receipts at the point of sale or transaction from a retail store location operated by

Lenox, in a transaction occurring between December 4, 2006 and April 19, 2007,

wherein the receipt displayed (1) more than the last five digits of the person's

credit card or debit card number, and/or (2) the expiration date of the person's

credit card number.

3.　Notice of the proposed settlement and the rights of Class Members to opt in

and/or out of the settlement and/or to become a Participating Claimant shall be

given by issuance of publication notice consistent with the terms of the

Agreement by November 24, 2008.

4.　A hearing shall be held before this Court on January 23, 2009, at 2:00 p.m. in

Courtroom 8A to consider whether the settlement should be given final approval

by the Court:

(a)　Written objections by Class Members to the proposed settlement will be

considered if received by Class Counsel on or before the Notice Response

deadline.

3

(b)     At the Settlement Hearing, Class Members may be heard orally in support of or, if they have timely submitted written objections, in opposition to the settlement.

(c)     Class Counsel and counsel for the Lenox Releasees should be prepared at the hearing to respond to objections filed by Class Members and to provide other information as appropriate, bearing on whether or not the settlement should be approved.

5.     In the event that the Effective Date occurs, all Class Members will be deemed to have forever released and discharged the Released Claims.  In the event that the Effective Date does not occur for any reason whatsoever, the Settlement Agreement shall be deemed null and void and shall have no effect whatsoever.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge

4